

GOODLEY MCCARTHY LLC
One Liberty Place
1650 Market Street
Suite 3600
Philadelphia, Pa 19103
Tel: 215-394-0541
www.gmlaborlaw.com

James E. Goodley, Esq.
james@gmlaborlaw.com
*Licensed in PA, NJ, NY, MD, VA*

Ryan P. McCarthy, Esq.
ryan@gmlaborlaw.com
*Licensed in PA, NJ*

November 3, 2023

**VIA ELECTRONIC MAIL**
Hon. Lorna G. Schofield
U.S. District Court for the
Southern District of New York
Thurgood Marshall United
States Courthouse
40 Foley Square
New York, NY 100007

    Re:    *Arbelaez et al. v. Electronic Interface Associates, Inc., et al.*, 23 Civ. 69 (LGS)

Dear Judge Schofield:

    We represent all of the defendants in the above-captioned action except defendant Great Midwest Insurance Company (collectively, the "EIA Defendants"). Great Midwest is the surety of several labor and material payment bonds that it provided on behalf of defendant EIA Electric, Inc., as principal, on the construction projects that are the subject of the Complaint (collectively, the "Projects"). Pursuant to the Court's directive of October 20, 2023, we submit this letter on behalf of all parties to request the Court's approval of the Settlement Agreement between Plaintiffs and Great Midwest. The Settlement Agreement, attached hereto as Exhibit A[1], memorializes the agreed upon terms during the parties' negotiation process. Pursuant to the Settlement Agreement, Great Midwest will pay $100,000.00 to Plaintiffs in satisfaction of all of Plaintiffs' claims as alleged in the Second Amended Complaint except for the FLSA claims, which claims Great Midwest paid in full earlier this year by way of payments to each of the five named plaintiffs totaling $47,713.68. Accordingly, this settlement will result in a dismissal of this action in its entirety. While the EIA Defendants are not a party to the Settlement Agreement, they approve of it.

---

[1] Note that the Settlement Agreement has not yet been signed by the Surety, but it has been approved by the Surety and is merely awaiting the ministerial act of signature. Plaintiffs will file a corrected exhibit when the Settlement Agreement has been fully executed.

In short, the five named Plaintiffs commenced an action alleging seven claims, but only one of the claims was for a violation of the Fair Labor Standards Act ("FLSA"). That claim, which alleged a minimum wage violation because Plaintiffs were not paid during the two-week period of November 23, 2022, through December 6, 2022, with plaintiff Arbelaez claiming that he was not paid at the correct rate for an additional 16 hours between November 9, 2022, and November 22, 2022, was resolved in mid-March 2023 by Great Midwest paying Plaintiffs the full amount of the wages due to them for the labor that they performed on the Projects during the aforementioned period (far above the minimum wage) (releases demonstrating payments made attached hereto as Ex. B.). Plaintiffs' counsel did not take any portion of these payments for attorney's fees, costs, or expenses.

The Parties continued to litigate the other claims alleged by Plaintiffs and the Settlement Agreement attached as Exhibit A reflects the proposed resolution of those non-FLSA claims.

Because the only FLSA claim was resolved in which Plaintiffs received far more than they would have under the FLSA—and Plaintiff's counsel did not take any fees from the amounts paid to Plaintiffs—the settlement of that claim is fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

**Plaintiff's Position**

Plaintiffs worked as electricians for defendant EIA Electric, which closed its business in early December 2022. Plaintiffs were not paid at all for the two weeks from November 23, 2022, through December 6, 2022, for labor they provided on the Projects. Plaintiff Arbelaez also claims that he was not paid at the correct rate between November 9, 2022, and November 22, 2022, on the Projects. Plaintiffs worked pursuant to public contracts at a prevailing wage rate. Plaintiffs asserted an FLSA claim for violation of the minimum wage laws, *i.e.*, Plaintiffs were not paid for their work. Plaintiffs worked approximately 80 hours in the two-week period from November 23, 2022, to December 6, 2022, amounting to damages totaling approximately $900 per day for each laborer.

Because Plaintiffs worked under public works contracts, EIA Electric obtained labor and material payment bonds from Great Midwest Insurance Co., which is the surety of these bonds. The Parties resolved Plaintiffs' FLSA claims by Great Midwest paying Plaintiffs their unpaid wages based on the prevailing wage—far greater than the minimum wage, pursuant to Great Midwest's payment bond obligations. Specifically, Plaintiff Arbelaez received a gross payment of $10,757.12 for the two weeks of work between November 23 and December 6 and the 16 additional uncompensated hours; Plaintiff Tapia received $10,392.74 for the two weeks; Plaintiff Castro Brito received $10,392.74 for the same time period; Plaintiff Sanchez received $5,778.73 for fewer days worked than the others; and Plaintiff Ligezka received $10,392.35 for the same period as Arbelaez, Tapia, and Castro Brito. The monies Plaintiffs received were at a rate of almost 15 times that of the minimum wage.

Plaintiffs alleged six other claims: (1) breach of contract by mischaracterizing Plaintiffs as laborers instead of electricians pursuant to the prevailing wage law on certain projects; (2) violation

of New York Labor Law 191 for paying Plaintiffs bi-weekly instead of weekly; (3) failure to pay Plaintiffs for accrued vacation and sick time; (4) failure to provide statutory wage notice pursuant to New York Labor Law 198; and (5) two claims against the Surety to make Plaintiffs whole for any unpaid wages as per contract. It is these claims that are being resolved through the Settlement Agreement attached as Exhibit A. These claims do not involve a violation of the FLSA.

**The EIA Defendants' Position**

As to the FLSA, minimum wage claims, the EIA Defendants consented to Great Midwest's payment to Plaintiffs for the unpaid wages for the period November 9, 2022, through December 6, 2022.

The EIA Defendants dispute several of Plaintiffs' other non-FLSA claims. As to the claim for mischaracterization of Plaintiffs, the EIA Defendants contend that Plaintiffs worked as laborers on the Projects, not as electricians, and therefore were paid the proper wage rate on the Projects. The EIA Defendants dispute the violation of New York Labor Law 191—failure to timely pay wages—to the extent that Plaintiffs were not damaged by the violation and any application of liquidated damages for the alleged violation is a violation of the EIA Defendants' due process rights. As to the wage notice claim, the EIA Defendants contend that Plaintiffs received all of the statutorily required information about their pay.

The EIA Defendants were forced to close their business in early December 2022 and the company is currently defunct and without funds.

**Great Midwest's Position**

In the middle of March 2023, Great Midwest paid Plaintiffs the unpaid wages on the Projects for the period November 9, 2022, through December 6, 2022, pursuant to its obligations under the relevant payment bonds, in the amounts set forth in the stipulations attached as Exhibit B. The payments made to Plaintiffs far exceed any amounts Plaintiffs could have recovered under the FLSA, and fully satisfied their FLSA claims.

As to the non-FLSA claims, Great Midwest disputes that it can be liable under its payment bonds for any amounts other than for what the bonds expressly cover pursuant to the bonds' terms, State Finance Law 137, and Labor Law 220-g, which are unpaid wages and interest. As to the facts, Great Midwest adopts and relies upon the defenses and arguments of the EIA Defendants.

**The Settlement Terms and Requested Attorneys' Fees**

Great Midwest resolved Plaintiffs' FLSA claims in their entirety by paying Plaintiffs the full amount of the unpaid wages to which Plaintiffs, respectively, were entitled relative to the Projects for the period November 9, 2022, through December 6, 2022, as set forth in the releases attached as Exhibit B. The payments made to Plaintiffs were approximately 15 times greater than what Plaintiffs could have recovered for their gross wages under the FLSA. Accordingly, the resolution of the FLSA claims was fair and reasonable to Plaintiffs. Plaintiffs' counsel did not take any fees for the resolution of the FLSA claims.

Hon. Lorna G. Schofield
November 3, 2023
Page 4

As to the non-FLSA claims, the parties respectfully submit that the analysis of *Cheeks* is inapplicable, as Plaintiffs' non-FLSA claims pertain to breach of contract and (alleged) violations of the New York Labor Law. Nevertheless, there is a vigorous dispute over whether Plaintiffs received the correct prevailing wage on the Projects, and there are significant factual and legal issues regarding the application of liquidated damages for the purported failure to timely pay Plaintiffs. As such, the payment of $100,000.00 to Plaintiffs (in addition to the amounts that Great Midwest already paid, as reflected in Exhibit B) is fair and reasonable to resolve this matter.

Plaintiffs' counsel respectfully requests $33,333.33 of the $100,000.00 settlement amount in attorneys' fees as agreed upon in Plaintiffs' retainer agreement with counsel's firm. Counsel is not seeking any additional amounts for costs and expenses.

Plaintiffs' attorneys and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and New York Labor Law claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). The Court in *Cheeks* did not assert that the Court needs to approve the attorney fee agreement in each FLSA case. The Court there denied the attorneys' fees because the attorneys were seeking to recover between 40 and 43.6% of the total payment with no justification as to why the attorneys would be entitled to an amount larger than the norm. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (*citing Lopez v Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015).

Here, Plaintiffs' counsel is seeking attorneys' fees of 33% pursuant to the retainer agreement entered into with their clients. Since 33% is a standard amount allowed to attorneys in FLSA cases, and since Plaintiffs entered into a contract for this amount with their counsel, this amount is not unreasonable, and *Cheeks* does not disagree.

In closing, we respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement.

Dated: November 3, 2023    Respectfully Submitted,

   */s/ James E. Goodley*
   James E. Goodley (NY Reg. No. 5724083)
   **GOODLEY MCCARTHY LLC**
   1650 Market Street, Suite 3600
   Philadelphia, PA 19103
   Telephone: (215) 394-0541
   james@gmlaborlaw.com
   *Attorney for Plaintiffs*

Hon. Lorna G. Schofield
November 3, 2023
Page 5

                                                  */s/ Adam P. Friedman*
                                                  Adam P. Friedman
                                                  **CHIESA SHAHINIAN & GIANTOMASI PC**
                                                  11 Times Square, 34th Floor
                                                  New York, NY 10036
                                                  Telephone: (212) 973-0572
                                                  afriedman@csglw.com

                                                  *Attorney for Defendant Great MidWest Insurance Co*.